IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEVEN CRAIG MCQUEEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11CV427-SRW |
| ) | (WO) |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Steven Craig McQueen brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  (Docs. ## 9, 10).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

Plaintiff filed his Title II application on December 17, 2007, alleging disability since June 20, 2005, due to rheumatoid arthritis, sleep apnea, back strain, hypertension, and a previous right wrist fusion.  He reported that he had worked for the U.S. Navy as a cargo handler and as a recruiter, and that the Navy had retired him on disability due to his health.

(Exhibits 1D, 3E, 7E).  After his application was denied at the initial administrative level, plaintiff requested a hearing before an administrative law judge. (Exhibits 1A, 1B, 2B, 3B). An ALJ conducted a hearing on December 17, 2008 and issued a decision thereafter. (R. 10-49).  The ALJ concluded that plaintiff has "severe" impairments of "status post arthrodesis (fusion) of the right wrist, history of gouty arthritis of the right wrist, headaches, mild obesity, and obstructive sleep apnea, corrected with CPAP" and "non-severe" impairments of "hypertension, question of occasional gout of the left toe, and history of eczema." (R. 15). He concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listings.  (R. 18).  He determined that plaintiff retains the residual functional capacity for the full range of light work, with additional limitations, and that – while he cannot perform his past relevant work – he retains the residual functional capacity to perform other jobs existing in significant numbers in the national economy. (R. 18-22).  He concluded, therefore, that plaintiff was not under a disability as defined in the Social Security Act from his alleged onset date through the date of the ALJ's decision. (R. 22).  The Appeals Council denied plaintiff's request for review of the ALJ's decision (R. 1-9), and plaintiff filed the present action thereafter  (Doc. # 1).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole

to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Dr. Jayesh Patel has been plaintiff's primary care physician at the VA since September 11, 2006. (See Exhibits 5F, 6F, 10F; R. 290 ("33 yo bm here today for his 1 st visit with me.")). After examining plaintiff on September 4, 2008, and at plaintiff's request (R. 410-16), Dr. Patel provided plaintiff with a "certificate" in which he states:

> THIS IS TO CERTIFY THAT ABOVE NAMED PERSON IS SUFFERING FROM FOLLOWING PROBLEMS.
>
> 1) htn 2) lbp 3) s/p steel plate in righ[t] wrist placed on 2/04 4) sleep apnea, using c pap. 5) chronic dermatitis.
>
> DUE TO ABOVE MEDICAL CONDITIONS, HE IS NOT ABLE TO ENGAGE IN ANY GAINFUL ACTIVITI[E]S.
>
> FOR ANY QUESTION REGARDING HIM, FEEL FREE TO CALL US.

(R. 396, 410-11).[1]  On October 30, 2008, the VA regional office issued a decision on plaintiff's appeal from an earlier VA disability benefit determination. (Exhibit 12E).[2] The VA determined that plaintiff has an "overall or combined rating [of] 80%" but that he is entitled to VA disability compensation at the "100% rate effective June 21, 2005" because

---

[1] The record includes an earlier determination by VA vocational rehabilitation counselor Melissa Brown that it was not reasonably feasible for plaintiff to achieve the vocational goal of employment. Brown decided, therefore, not to place plaintiff on a rehabilitation plan. She so advised the VA adjudication division by letter dated July 29, 2008, noting plaintiff's 80% disability rating and, also, that he had not worked since June 2005 and had applied for SSDI benefits. She concluded:

> Veteran has been found **not to be currently reasonably feasible** due to the following reason(s): physical condition(s) are such that he cannot function at an excepted level to retain employment, will be at an extreme disadvantage when applying for jobs competing against non-disabled applicants. VRC **has no doubt** that veteran can expect to encounter negative attitudes among prospective employers for jobs due to above listed condition(s).
>
> Veteran has been determined to have impairment to employability (**serious employment handicap**). After reviewing veteran[']s employment history, education and training, using the Guide for Occupational Exploration and/or the Selected Characteristics of the Dictionary of Occupational Titles (DOT), it has been determined that veteran **has not been** able to overcome this impairment by education or employment experience.

(Exhibit 10E, R. 144-45)(emphases in original). The vocational expert at the hearing testified that he found this evaluation to be "amazing" as "there were no testing results in terms of how well he would be able to handle and manipulate, finger items." (R. 48). However, contrary to the VE's testimony, the record does include the results of such testing by an occupational therapist in June 2008. (R. 423-26). Nevertheless, the ALJ ultimately concluded that plaintiff is precluded from using his right upper extremity for handling and fingering (R. 18) and did not rely on the VE's erroneous testimony regarding the VA's vocational rehabilitation assessment. (R. 21-22).

[2] Although the December 2006 examination results are not in the record, it appears that plaintiff was then examined by Dr. Beverly Boyd in connection with seeking an increase in his VA disability rating (R. 306; see also R. 296); on January 30, 2008, Dr. Barbara Gales conducted a "compensation and pension examination" in connection with review of plaintiff's VA claim. (R. 298-306).

he is "unable to work due to [his] service connected disability/disabilities." (R. 151).

Plaintiff contends that the ALJ erred by "failing to properly consider and weigh the evidence relating to the Department of Veterans Affairs determination that the claimant is disabled and unable to work and the medical opinions of a treating physician." (Doc. # 14, p. 6). Plaintiff points out that, even though it is not binding on the Commissioner, a VA finding of disability is entitled to "great weight." He argues that the ALJ "made no reference at all to the V.A.'s granting plaintiff entitlement to individual unemployability effective June 21, 2005[,]" that he "provided no specific discussion or explanation of his consideration of the V.A. evidence, except as it applied to the V.A.'s determination of 50% disability for sleep apnea[,]" and that the ALJ's failure to indicate the weight he assigned to the VA disability determination constitutes legal error. (Id., pp. 6-7). He further maintains that the ALJ erred by failing to discuss or make any findings regarding the opinion of Dr. Patel that plaintiff is not able to engage in any substantial gainful activities. (Id., p. 7).

In his decision, the ALJ does not mention either Dr. Patel or his opinion that plaintiff is not able, due to his diagnosed impairments, to engage in gainful activities. (See R. 13-22). His discussion of the VA disability benefit determination is as follows:

> I have noted the Veteran's Administration findings at Exhibit 12E, their decision to grant the claimant 50% disability due to obstructive sleep apnea, but I do not agree with the overall decision, as it appears that the claimant's sleep apnea is successfully treated with a CPAP machine, according to the testimony provided by Dr. Anderson at the hearing, which would not significantly interfere with daytime work activities.

(R. 20). Citing this discussion, the Commissioner argues that the ALJ *did* discuss the VA

disability decision but discounted it because "he noted that the VA decision was based largely upon the VA's finding that Plaintiff had 50% disability due to sleep apnea" and that plaintiff's "sleep apnea is successfully treated with a CPAP machine[.]" (Doc. # 15, p. 7)(citing R. 20, 144). She further maintains that "Plaintiff's contention that the ALJ did not consider Dr. Patel's opinion has no merit." (Id., pp. 7-8). She "notes that the VA decision was based primarily on Dr. Patel's assessment" and, accordingly, that "any discussion of that [VA] decision was, in effect, a discussion of Dr. Patel's opinion." (Id., p. 6)(citing R. 144, 165). The Commissioner argues that, even if the court concludes to the contrary, there was no error. She observes that Dr. Patel's opinion consists of two parts – his diagnoses and his opinion on plaintiff's ability to work – and argues that the ALJ adopted the former (because he found the plaintiff to have all of the impairments listed by Dr. Patel) and the latter is "not a medical opinion, but an administrative finding on an issue reserved to the Commissioner" that is not entitled to special deference. (Id., p. 8). She contends that since this is so, the ALJ was not required to give good reasons for the weight he assigned to Dr. Patel's non-medical opinion. She concludes:

> In any case, even if Dr. Patel's opinion was a medical opinion and the ALJ erred in not giving reasons for discounting the opinion, Plaintiff has not shown the error was not harmless. See Shinseki v. Sanders, 129 S.Ct. 1696, 1705-06 (2009)(the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination). In this case, the opinion was entitled to little weight, and had the ALJ specifically considered it, he would have given it little weight. The ALJ would have found it was conclusory. A treating physician's opinion may be discounted when it is not accompanied by objective medical evidence or is conclusory. See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Moreover, the opinion was inconsistent with Dr. Patel's treatment notes that showed that Plaintiff's conditions were stable,

>   although they did support a finding, as the ALJ made, that Plaintiff had severe limitations of his right hand (Tr. 18). An ALJ may discount the opinion of a treating physician where the opinion is contradicted by the objective medical evidence.

(Doc. # 15, pp. 8-9).

As noted above, the ALJ did not mention Dr. Patel or discuss his opinion that plaintiff is unable to engage in any gainful activities. While the ALJ refers to "the Veteran's Administration findings at Exhibit 12E, he describes it as "their decision to grant the claimant 50% disability due to obstructive sleep apnea[.]" (R. 20). However, Exhibit 12E contains no reference to the specific ratings assigned to plaintiff's discrete impairments. It includes a letter from A. L. Hill, the Veterans Service Center Manager, advising plaintiff of and transmitting the favorable decision. Hill's letter sets forth the amount of VA disability compensation awarded and the payment dates; it notes that plaintiff has "an overall or combined rating" of "80%" but that he is granted entitlement at the 100% rate because he is "unable to work due to [his] service connected disability/disabilities." (Exhibit 12E at p. 4, R. 151). Hill attaches the decision of the VA "decision review officer," along with a number of forms and other information. (Id., at p. 7, R. 154). The decision review officer lists some of plaintiff's service connected impairments but does not mention the disability percentage rating associated with these impairments. (Id., at p. 19, R. 166)("He is service connected for obstructive sleep apnea, arthrodesis right wrist, low back strain, and hypertension."). It seems likely that, rather than discounting only the VA's assignment of a 50% disability rating as

a result of plaintiff's sleep apnea,[3] the ALJ – although he does not say so – meant instead to discount the VA's finding that plaintiff is entitled to compensation at the 100% rate on the basis of individual unemployability and/or its conclusion that his "overall or combined rating is 80%" (R. 151), on the basis of evidence elsewhere in the record indicating plaintiff's 50% sleep apnea rating.[4]

The court need not decide whether the ALJ's consideration of the VA disability rating is adequate, however, because – even assuming that it is – he committed reversible error by failing to consider Dr. Patel's opinion. The Commissioner contends that the ALJ's discussion of the VA determination, set forth in its entirety above, "was, in effect, a discussion of Dr. Patel's opinion," (see Doc. # 15, p. 6) simply because the VA decision review officer cites Dr. Patel's September 4, 2008, statement as the basis for his conclusion that plaintiff is entitled to compensation on the basis of "individual unemployability" (see Exhibit 12E at pp. 18-19, R. 165-66). The court cannot agree. In his written decision, the ALJ touches on the VA's disability determination only briefly (see R. 20); there is nothing in that decision

---

[3] As the Commissioner notes, the 50% disability rating for sleep apnea requiring the use of a CPAP machine is prescribed by the schedule of ratings set forth in 38 C.F.R. § 4.97 (diagnostic code 6847).

[4] In the VA decision letter, Hill advised plaintiff that the VA does "not add the individual percentages of each condition to determine [the] combined rating" but, instead, it "use[s] a combined rating table that considers the effect from the most serious to the least serious conditions." (R. 151). Plaintiff's VA records reflect a 50% disability rating due to sleep apnea, 40% due to loss of wrist motion, 10% for lumbar or cervical strain, 10% for eczema, and 0% each for hypertension and limitation of motion of a finger. (See R. 223, 226, 230 (notations of individual percentages in medical record); R. 284 (VA social worker's September 2006 note that "Veteran is service connected 80%"); see also R. 144 (VRC counselor's July 2008 letter)).

suggesting that the ALJ was aware that the VA decision review officer had relied on Dr. Patel's opinion, or even that the ALJ knew of Dr. Patel's September 4, 2008 opinion at all.[5]

The Commissioner argues that the part of Dr. Patel's statement expressing his opinion regarding plaintiff's ability to engage in gainful activities relates to an issue reserved to the Commissioner and, therefore, that it is not entitled to any special deference, and the ALJ was not required to state his reasons for the weight he accorded it. While this may be so, the ALJ *was* required to *consider* Dr. Patel's opinion; his opinion does not reflect that he did so. See Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 834-35 (11th Cir. 2011)("As for the Commissioner's argument that Dr. Earls's opinion that Lawton could never return to work was an opinion on an issue reserved to the Commissioner and, thus, was not entitled to any special weight, the ALJ never said that he was rejecting Dr. Earls's opinion because it was not a medical opinion. Moreover, while an ALJ is not permitted to give a treating physician's opinion on an issue reserved to the Commissioner controlling weight, he is required to consider it. Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to explain the weight he afforded to 'obviously probative exhibits.'")(citations omitted); cf. Kelly v. Commissioner of Social Security, 401 Fed. Appx. 403, 407-08 (11th Cir. 2010)(noting that "[a] doctor's opinion on

---

[5] The ALJ relies on a portion of the primary care nurse's screen note for plaintiff's visit to Dr. Patel on September 4, 2008 but, as noted above, does not mention the opinion Dr. Patel rendered on that date that plaintiff is unable to engage in gainful activities. (See R. 20 ("On September 4, 2008, the claimant reported that he walks for exercise. The claimant has a body mass index (BMI) of 27[.]"); see also R. 413-15 (LPN Regina Williams' screening note for September 4, 2008); R. 410-412 (Dr. Patel's note for plaintiff's office visit on September 4, 2008 and Dr. Patel's "certificate" signed the same day).

a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but *will be taken into consideration*" and "[g]iven that [the treating physician's] letter merely listed Kelly's impairments and stated that she was unable to return to work, it arguably offered only a non-medical opinion on a matter reserved for the ALJ" but concluding that – even if it was a medical opinion – the reasons stated by the ALJ for giving little weight to the treating physician's opinion constituted good cause for giving it less weight)(emphases added).

The Commissioner next invites the court to conclude that the ALJ's failure to consider Dr. Patel's opinion is harmless, because "had the ALJ specifically considered it, he would have given it little weight. The ALJ would have found it was conclusory." (Doc. # 15, p. 8). The Commissioner further argues that an ALJ may discount a physician's opinion where it is contradicted by the objective medical evidence, and explains how Dr. Patel's opinion is inconsistent with his treatment notes. (Id., p. 9). The Eleventh Circuit, however, does not countenance the approach the Commissioner suggests where, as here, the ALJ's decision does not indicate that he considered the treating physician's opinion at all, even where that opinion was on an issue reserved to the Commissioner. See Lawton, 431 Fed. Appx. at 834 ("[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.")(citing Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir.1984)); id. at 834-35 (ALJ was required to consider a treating physician's opinion that the claimant was

unable to return to work and to explain the weight he gave it).[6]  Where an ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.[7]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED.  A separate judgment will be entered.

DONE, this 25th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6]  The court does not here suggest that a "harmless error" analysis is never appropriate.  For instance, the ALJ's RFC finding in the present case is internally inconsistent; it allows occasional use of plaintiff's right hand for "fine manipulation" while also precluding entirely the use of his right upper extremity for "fingering."  (R. 18).  If the court were to reach the issue of whether the Commissioner's step five finding is supported by substantial evidence, it would likely find the inconsistency to be harmless, as the ALJ's hypothetical question to the vocational expert included the more restrictive limitation.  (R. 45).

[7]  On remand, the Commissioner may well determine – at either the Appeals Council level or on further remand to the ALJ – that, for the reasons she argues here, Dr. Patel's opinion is entitled to little or no weight.  However, the Eleventh Circuit requires that the Commissioner consider it; the weight that the opinion is due is not for this court to decide.  In reversing the Commissioner's decision, the court makes no direction regarding the Commissioner's ultimate disposition of plaintiff's claim.